<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: ROBERTO LO SIA and FELICITAS LERMA SIA,**<br><br>*Debtors*, | **Bankruptcy Action No. 10-41873**<br><br>**ON APPEAL FROM THE BANKRUPTCY COURT OF THE DISTRICT OF NEW JERSEY** |
| **ROBERTO LO SIA and FELICITAS LERMA SIA,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**BAC HOME LOANS SERVICING et al.,**<br><br>*Defendants.* | **Civil Action No. 15-1366**<br><br>**Adv. Pro. No. 11-1436**<br><br>**OPINION** |

ARLEO, UNITED STATES DISTRICT JUDGE

**THIS MATTER** comes before the Court on appeal by Appellants/Debtors Roberto and Felicitas Sia ("Debtors") from the Bankruptcy Court's orders dismissing Appellee Parker McCay P.A. ("Parker McCay") from the case and granting summary judgment in favor of Appellee BAC Home Loans Servicing, LP ("BAC"). Dkt. No. 1. Debtors also appeal several discovery-based and evidentiary orders related the summary judgment decision. Id. For the reasons set forth below, the Bankruptcy Court's Orders are **AFFIRMED**.

## I. BACKGROUND

In August 2005, Debtors borrowed $487,500 from Countrywide Home Loans, Inc. ("Countrywide") through a promissory note and secured the loan through a mortgage on their house in Westfield, New Jersey. Dkt. No. 4, Record on Appeal ("R.") at 59, 63. A few years later,

1

they fell into arrears on their loan payments.  This prompted BAC to file a foreclosure action in February 2010.  R. at 79.

In October 2010, Debtors filed for relief under Chapter 13 of the United States Bankruptcy Code (the "Code").  R. at 1.  Their plan disputed that they owed the claimed arrears and that BAC was the lawful owner and holder of the original mortgage note.  Schedule A, D.  BAC filed a Proof of Claim, which was prepared by their attorneys, Appellee Parker McCay P.A. ("Parker McCay"), for the arrears amount.  R. at 57.  The Proof of Claim listed BAC as creditor of the loan and attached an "Assignment of Mortgage" notice from February 2010.  The notice memorialized the assignment of Debtors' mortgage from Countrywide (through its nominee, Mortgage Electronic Registration Systems, Inc.) to BAC.  R. at 78.  The Proof of Claim also contained a copy of Debtors' note that was unendorsed.  R. at 62.[1]

Debtors then filed an adversary complaint against BAC and Parker McCay asserting several claims relating to BAC's claims of interest in the mortgage.  Dkt. No. 4-5, Am. Compl. Debtors alleged that Countrywide sold their mortgage as part of a securitization process into a trust called Funding 2005-H ("Trust").  Id. ¶¶ 11-21.  The Trust was governed by a Pooling and Surviving Agreement ("PSA") that set out certain procedures for transferring notes: before a mortgage could enter the trust, the PSA required that the mortgage follow a chain of endorsement from the original holder to the Trust's sponsor and depositor.  Id.  Debtors alleged their mortgage note was never endorsed in this manner, and it never identified the Trust as an owner of the note, so BAC could not be the note's holder or owner.  Id.

---

[1] BAC also filed an objection to the confirmation of Debtors' plan, identifying itself as the holder of the mortgage.  R. at 88.

2

Debtors asserted six causes of action against BAC and Parker McCay based on these facts. Counts One and Two asserted that BAC lacked standing to file the Proof of Claim because it was never the holder, assignee or owner of the mortgage note and because the mortgage note was never lawfully endorsed.  Id. ¶¶ 37-46.  Count Three asserted that BAC violated the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq. ("TILA") and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 et seq. ("RESPA") by failing to respond in a timely and adequate manner to certain Qualified Written Requests ("QWR") that Debtors sent.  Id. ¶¶ 47-52.  Count Four asserted that BAC and Parker McCay committed a fraud on the court by filing an improper Proof of Claim.  Id. ¶¶ 53-57.  Count Five asserted that BAC and Parker McCay violated §§ 1692(e) and (f) of the Fair Debt Collection Practices Act ("FDCPA") by making false and misleading representations concerning the amount of the debt, the fees applied, the application of payments and the ownership of the Note.  Id. ¶¶ 58-61.  Count Six claimed breach of contract based on a theory that the mortgage note is a legally enforceable contract and that BAC's conduct constituted a breach.[2]  Id. ¶¶ 62-64.

Parker McCay filed a motion to dismiss the Amended Complaint with prejudice for failure to state a claim.  In an Order dated June 29, 2011, the Hon. Novalyn L. Winfield granted the motion, which dismissed Parker McCay, alone, from the case.  Although the June 29th Order was not supplemented by a written opinion,[3] it appears that the court held that Debtors could not state a claim against Parker McCay for violation of the FDCPA based on the filing of the Proof of

---

[2] The parties eventually settled the TILA and RESPA claims.  Appellant Br. at 6.

[3] However, the court did note the basis for its ruling in its summary judgment opinion.  See Sia v. BAC Home Loan Servicing, Adv. Pro. No. 11-1436, Dkt. No. 61 at 3 n.2 (Bankr. D.N.J. Aug 27, 2013) ("Op.").

Claim.  In an Order dated August 21, 2012, the court also granted BAC's motion for judgment on the pleadings as to the FDCPA claim on the same basis.

When discovery began, Debtors served three subpoenas upon non-party Wells Fargo Bank, N.A. ("Wells Fargo"), the custodian of the Trust.  R. at 126, 163, 200.  The subpoenas requested certain documents and information respecting whether the mortgage loan was ever conveyed to the Trust, as well as a request for depositions of a corporate officer or employee.

Wells Fargo filed a motion to quash the subpoenas.  See R. at 113-24.  They argued that (1) Debtors lacked standing to argue that a failure to follow the terms and conditions of the PSA renders the note and mortgage unenforceable; (2) the questions were overbroad and duplicative of information supplied previously; and (3) the subpoenas sought attorney-client privileged information.  In an Order dated August 20, 2012, the court granted the motion to quash and adopted the reasons offered by Wells Fargo.

Meanwhile, BAC produced a different copy of the Note from the version contained in the Proof of Claim.  R. at 317-20.  This note, unlike the first version, contained an indorsement to "Wachovia Bank, National Association [("Wachovia")], as trustee for the holders of Banc of America Funding Corporation Mortgage Pass Through Certificates, Series 2005-H."  R. at 320.

Debtors filed a motion to compel BAC to identify witnesses and make them available to be deposed.  R. at 321.  BAC provided Cara Hardy, a mortgage resolution associate at BAC, for deposition via telephone.  R. at 324-86.  Ms. Hardy's testimony largely discussed how the Debtor's mortgage note was indorsed and how the mortgage loan was sold to the Trust.  Importantly, Ms. Hardy indicated that BAC began servicing Debtors' mortgage loan in 2005, roughly five years before BAC initiated the foreclosure proceeding.

In sum, based on Ms. Hardy's deposition and affidavit, the following process was explained:  (1) Countrywide signed a loan purchase and service agreement with Banc of American Mortgage capital Corporation that provided for the sale of various trusts.  Meanwhile, Banc of America Funding Corporation ("BAFC") signed a servicing agreement with Bank of America, N.A. ("BANA"); (2) after Debtors signed the mortgage loan with Countrywide, a securitization trust was created by the PSA between BAFC as Depositor, Wells Fargo as Master Servicer, and Wachovia as Trustee; (3) Debtors' mortgage loan was transferred to Wachovia; (4) Countrywide kept the note and mortgage at Recon Trust; (5) in October 2005, BANA's collateral routing history shows that Debtors' note and mortgage were sent to Wells Fargo in a collateral file; (6) by the time the note reached Wells Fargo, it had been indorsed in blank; (7) Recon Trust's business practice was to indorse notes in blank; (8) in February 2011, Wells Fargo sent the collateral file to BANA's agent, where an imaged copy of the note showed a special indorsement placed on the note by Wells Fargo to Wachovia; and (9) the note remained with Wells Fargo from October 2005 until February 2011, when it was sent to BAC's counsel for the purpose of the instant litigation.

Thereafter, Debtors retained Leo McCabe as Mortgage Loan Origination and Securitization Expert.  R. at 387.  Mr. McCabe's expert report ("McCabe Report") explained standard banking industry practices with respect to mortgage loans and the origination and securitization of Debtors' mortgage.  R. at 387, 391.  However, Debtors never identified McCabe as an expert to BAC during discovery.  R. at 635-36.

At the close of discovery, Debtors and BAC filed cross-motions for partial summary judgment.  R. at 635.  For the first time, Debtors submitted the McCabe Report and a demonstrative exhibit ("Exhibit J") purporting to show that the indorsement in the note was similar to other indorsements BAC submitted in other bankruptcy cases.  Id.  BAC included the affidavit of Ms.

Hardy and related documents.  BAC filed motions in limine to exclude the McCabe Report and Exhibit J because the report was filed late and contained irrelevant information.  Debtors moved to strike Ms. Hardy's testimony and related documents because, among other reasons, she lacked personal knowledge of the events for which she testified.  R. at 600.

On August 27, 2013, the bankruptcy court decided the evidentiary issues and summary judgment motion.[4]  Sia v. BAC Home Loan Servicing, Adv. Pro. No. 11-1436, Dkt. No. 61 (Bankr. D.N.J. Aug 27, 2013) ("Op.").  The court denied the motion to strike the Hardy Affidavit, finding that Ms. Hardy could have personal knowledge of the information for which she testified based on a review of the files and records.  Id. at 8-13.  The court also found that her affidavit satisfied the business records exception to the hearsay rule contained in Fed. R. Evid. 803(6).  Id.  The court granted BAC's motion in limine to bar the McCabe Report because Debtors "never identified this expert in their discovery responses and that the alleged expert's report is irrelevant to the determination of whether the Trust, as holder of the Note, is entitled to enforce the Note."  Id. at 19.  The court granted the motion to limine to bar Exhibit J because it was not authenticated.  Id. at 12-13.

The court then granted BAC's motion for summary judgment on Counts One, Two, Five, and Six and denied Debtors competing summary judgment motion on Counts One and Two.   The court entered judgment in favor of BAC on the first two Counts, which challenged BAC's standing to enforce its claim, because the Trust was entitled to enforce the note, BAC was the sub-servicer of the Trust at the time Debtors defaulted, the note and mortgage have been transferred to BAC in

---

[4] The orders for the motion to strike and motions in limine were filed after the Opinion.  The court denied Debtors' motion to strike the Hardy Affidavit in an Order dated August 28, 2013.  Judge Winfield barred the McCabe Report and Exhibit J from consideration in connection with the summary judgment motion in an Order dated August 29, 2013.

the court of the litigation, and Debtors lack standing to challenge whether the conveyance of the mortgage loan met the requirements of the New York Trust Law or the PSA.  Id. at 5-23.  The court recognized, however, that BAC should have included in its Proof of Claim that it was acting on behalf of the Trust and directed BAC "to promptly amend the Proof of Claim to reflect its representative capacity and to attach the Note" indicating indorsement to it.  Id. at 22-23.

The court next granted judgment in favor of BAC on Count Five, the FDCPA claim. Debtors asserted that BAC violated the FDCPA by "making false and misleading representations concerning the amount of the debt, the fees applied, the application of payments and the ownership of the Note."  Id. at 23-24.  The court found that Debtors failed to substantiate the claim.  Id. at 24. They did not provide any evidence showing, specifically, which documents or correspondences were false—aside from time-barred allegations that BAC improperly placed Debtors' payments in a suspense account when they fell into arrears.  Id.

Finally, the court granted judgment in favor of BAC on Count Six, the breach of contract claim.  Id. at 24-26.  While Debtors did not specify which provisions of the note or loan were breached, the court construed the complaint as alleged that BAC should not have placed their payments it's a suspense account.  Id. 24-25.  However, neither the note nor loan agreements prohibited this conduct.  Id.  Moreover, Debtors did not establish how they were damaged by the conduct.  Id.

Accordingly, in an Order dated August 28, 2013, Judge Winfield granted the motion for partial summary judgment in favor of BAC as to the First, Second, Fifth and Sixth Counts of the First Amended Complaint and denied Debtors' motion for summary judgment.  The parties eventually settled Count Three, the TILA/RESPA claims, in March 2014.  Sia v. BAC Home Loan

Servicing, Adv. Pro. No. 11-1436, Dkt. No. 74.  The court issued an order of final judgment on November 19, 2014.  Id.

Debtors timely filed a notice of appeal.  Specifically, Debtors appeal: (1) the June 29, 2011 Order granting Parker McCay's motion to dismiss and the August 21, 2012 Order granting BAC's motion for judgment on the pleading on the same ground; (2) the August 20, 2012 Order granting Wells Fargo's motion to quash the subpoenas; (3) the August 28, 2013 Order granting BAC's motion for partial summary judgment; (4) the August 28, 2013 Order denying Debtors' motion for partial summary judgment and their motion to strike the Hardy Affidavit; (5) the August 29, 2013 Order granting BAC's motion in limine to bar the McCabe Report and Exhibit J; and (6) the November 19, 2014 Order entering judgment.[5]

## II.   STANDARD OF REVIEW

This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a)(1).  The bankruptcy court's legal determinations are reviewed de novo, its "factual findings for clear error, and its exercise of discretion for abuse thereof."  Hefta v. Official Comm. of Unsecured Creditors, 405 F.3d 127, 130 (3d Cir. 2005).  Where the orders appealed present mixed questions of law and fact, this Court will apply the relevant standard to each issue.  In re Sharon Steel Corp., 871 F.2d 1217, 1222–23 (3d Cir. 1989).  The Court exercises plenary review over rulings on motions to dismiss.  In re Avandia Mktg., Sales Practices & Prods. Liab. Litig., 685 F.3d 353, 357 (3d Cir. 2012).

---

[5] Debtors also apparently appeal the September 5, 2012 Order denying their motion to compel discovery, but Debtors do not address the issue or explain the underlying factual basis at any point in their briefs.  Conversely, although Debtors apparently appeals the August 29, 2013 Order granting BAC's motion in limine to find Exhibit J inadmissible, they do not designate it as an order appealed in their notice of motion.  However, a fair reading of Debtors' papers suggests they do appeal that order, and both parties have briefed the issue.  The Court will therefore consider it the issue in its analysis below.

III.   ANALYSIS

Debtors appeal can be divided into three categories.  They raise issues regarding the motion to dismiss in favor of Parker McCay, evidentiary issues decided during discovery and leading up to the partial summary judgment motions, and the substantive decisions reached in the partial summary judgment motions.  The Court will address each in turn.

### A.  Order Granting Parker McCay's Motion to Dismiss

Debtors assert that Judge Winfield incorrectly granted the motion to dismiss the FDCPA claim against Parker McCay.  They argue that the bankruptcy court granted the motion on the ground that the FDCPA did not apply to Proof of Claim issues, but intervening Third Circuit law, Simon v. FIA Card Services, 732 F.3d 259 (3d Cir. 2013), held otherwise.[6]  Consequently, Debtors argue that the court should have adjudicated the issue on the merits and found that Parker McCay violated the FDCPA when it filed an incorrect Proof of Claim.

Parker McCay acknowledges that Simon v. FIA Card Services permits the bankruptcy court to hear FDCPA claims in certain circumstances, but argue that a violation relating to the Proof of Claim is not one them.  Therefore, they argue, the FDCPA claim is preempted.  The Court agrees.

In Simon, the Third Circuit addressed the relationship between the FDCPA and bankruptcy proceedings—specifically, "whether, or to what extent, an FDCPA claim can arise from a debt collector's communications to a debtor in a pending bankruptcy proceeding."  732 F.3d at 271.  Rejected calls for a categorical preclusion of FDCPA claims in bankruptcy proceedings, the court

---

[6] The court did not draft a written opinion explaining the order granting the motion.  Nonetheless, the Court's review of the motion is plenary, and it may affirm the decision even if the court below relied upon an improper ground or reason as long as the reasons are supported in the record. McNamara v. PFS, 334 F.3d 239, 242 (3d Cir. 2003); Cardona v. Bledsoe, 681 F.3d 533, 535 n.4 (3d Cir. 2012).

created the following test:  "whether the FDCPA claim raises a direct conflict between the Code or Rules and the FDCPA, or whether both can be enforced."  Id. at 274.

Applying the test, the court found that some of the plaintiffs' FDCPA were precluded while others were not.  Plaintiffs' FDCPA claim premised on a violation of § 1692e(11) were dismissed because there was an actual conflict involved if both statutes were enforced: "If . . . a § 1692e(11) claim could arise from the fact that the [firm's] letters and subpoenas did not include the 'mini-Miranda' notice, the firm would violate the automatic stay provision of the Bankruptcy Code by including the notice or violate the FDCPA by not including the notice."  Id. at 280.  On the other hand, the plaintiff's claims under § 169e(5) and (13) were not precluded.  Those claims were based on the defendants' failure to schedule the Rule 2004 examination in the right location and to include certain information in the subpoenas.  Id. at 278-79.  The court held that nothing in the Bankruptcy Code's subpoena requirements would prevent the bankruptcy court from enforcing the FDCPA obligations.  Id. at 279.

The question then, in this case, is whether an FDCPA claim based on the Proof of Claim creates a direct conflict with the Bankruptcy Code or Rules.  The Court finds that it does and is persuaded by other courts that have found the same.  See In re Chaussee, 399 B.R. 225 (B.A.P. 9th Cir. 2008); In re Guenot, No. 11-37501, 2014 WL 67320 (Bankr. D.N.J. Jan. 2, 2014).

The Ninth Circuit Bankruptcy Appellate Panel ("B.A.P.") provides the most instructive explanation.   In In re Chaussee, the B.A.P. highlighted several incompatibilities between the FDCPA and the Code when it comes to Proof of Claims violations.[7]  For example,

---

[7] The Court is mindful that the Third Circuit rejected the categorical preclusion of FDCPA claims established in In re Chaussee.  See Simon, 732 F.3d at 272.  But, as the court noted, "[i]n addition to the categorical basis, the Chaussee also found that an FDCPA claim based on a Proof of Claim filed in a pending bankruptcy would create direct conflict with the Bankruptcy Code."  Id.  The court stated that the "direct conflict" rationale in Chaussee "was a specific, and narrower, basis for

> a Proof of Claim filed in a bankruptcy case constitutes prima facie evidence of its validity and is allowed unless and until the debtor objects to it. § 502(a); Rule 3001(f).  If an objection is filed, the bankruptcy court resolves that objection after notice and a hearing. Rule 3007.  In contrast, under FDCPA, a debt is presumed valid if the debtor does not dispute the debt within thirty days after receipt of an "initial communication."  Even then, FDCPA provides that, if the consumer fails to dispute the validity of a debt, that failure may not be construed by any court as an admission of liability by the consumer.  FDCPA § 1692g(c).

In re Chaussee, 399 B.R. at 238.  Moreover, the B.A.P. noted, the FDCPA requires a debt collector to include a notice of the debtor's rights within five days of the initial communication, but the Bankruptcy Code's automatic stay provision prevent any collection steps after the bankruptcy case is filed.  Id.   The B.A.P. concluded that creditors could not "comply with both statutory schemes when the Code dictates they cease all collection actions, whereas FDCPA requires them to communicate with the debtor in connection with the collection of a debt."  Id.

In light of these direct conflicts between the Code and the FDCPA in this context, Debtors cannot maintain their action against Parker McCay.[8]

### B.  Discovery and Evidentiary Issues

Debtors assert that the court erred in its discovery and evidentiary decisions in three ways. First, the court should not have quashed the subpoenas directed to Wells Fargo, the custodian of the Trust.  Second, the court should not have admitted Ms. Hardy's testimony into evidence.  Third, the court should not have excluded the McCabe Report or Exhibit J from consideration during the summary judgment motion.  None of these arguments have merit.

---

finding that the FDCPA claim could not proceed."  Id.  Thus, reliance on that portion of the Chaussee opinion is consistent with the Third Circuit's decision in Simon.

[8] Parker McCay also argues that Debtors have failed to state a claim because the Proof of Claim was accurate, Parker McCay is not a "debt collector," and because Debtors raise arguments never asserted below.  Since the Court resolves the motion on the ground that conflict exists between separate statutory schemes, it need not reach the additional arguments.

### 1. Motion to Quash

Debtors argue that the court should not have quashed the subpoenas served on Wells Fargo because Wells Fargo keeps image files of documents that they receive; therefore, Debtors would have been able to obtain an image of their note when Wells Fargo received it to determine if it contained a blank indorsement.

BAC argues that Debtors raise the issue of blank indorsement for the first time on appeal. Below, Debtors' opposition papers, interrogatories, and document requests were directed only at whether the mortgage loan had been conveyed to the Trust according to the terms of the PSA. That question, BAC argues, was both directly answered in BAC's responses to interrogatories and was not relevant considering Debtors did not have standing to raise challenges to the PSA.

The Court finds that the decision to quash the subpoena was not an abuse of discretion. First, the Court agrees that Debtors did not raise the issue below. See In re Secivanovic, No. 04-2381, 2005 WL 1583357, at *1 (3d Cir. July 7, 2005) (precluding party from raising new arguments on appeal) (internal citation omitted). Debtors do not raise this ground in their opposition to Wells Fargo's motion. Debtors' interrogatories do not speak to this ground either, aside from broad requests for documents and records related to the mortgage loan.

Second, Debtors' broader argument that Wells Fargo's documents would reveal whether the note was properly indorsed also does not stand. As discussed below, the court correctly found that Debtors do not have standing to challenge chain of indorsement under the PSA. See Sec. IV.C, infra (affirming bankruptcy court's legal conclusions on standing and conveyance issues). In light of that decision, the bankruptcy court correctly found that any discovery related to that issue would be irrelevant in that it would have no bearing on Debtors' ability to prove their claim.

Moreover, as BAC correctly notes, Debtors were able to obtain virtually identical information from BAC based on previous responses to Debtors' interrogatories.

Accordingly, the bankruptcy court appropriately quashed the Wells Fargo subpoenas.

### 2. Admissibility of Hardy Affidavit

Debtors next argue that the bankruptcy court should not have admitted Ms. Hardy's testimony and related documents for two reasons.  First, they argue Ms. Hardy did not have personal knowledge of the matters to which she testified because she began her employment in 2011 but testified to conveyances in the trust that occurred in 2005.  Second, Ms. Hardy could not provide the foundation required under the business records exception for the documents attached to her affidavit—i.e., the original note and mortgage, relevant portions of the PSA, a list of all loans in the Trust (including Debtors'), and Debtors' loan payment history.

BAC responds that Ms. Hardy had personal knowledge of the indorsement process based on a review of the contents of files and records, as the bankruptcy court found.  While BAC concedes that Ms. Hardy is not a document custodian, they argue that she is an "otherwise qualified witness" who can attest to the foundational requirements of the business records exception.  The Court again agrees.

On appeal, Debtors rehash the same arguments raised before the court below.  In its opinion, the bankruptcy court considered and sufficiently addressed these concerns.  As required by Fed. R. Civ. P. 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  The court did not abuse its discretion in holding that "personal knowledge" may be gained through review of the relevant records relating to the case.  See, e.g., Serfess v. Equifax Credit Info. Servs., LLC, No. 13-0406,

2015 WL 5123735, at *2 (D.N.J. Sept. 1, 2015) (denying motion to strike declaration of employee who attested to the facts "based on [her] personal knowledge gained through [her] employment with Equifax and/or [her] review of Equifax's business records"); Byrd v. Lynch, No. 10-0247, 2011 WL 2680572, at *6 (D.N.J. July 8, 2011) aff'd, 479 F. App'x 444 (3d Cir. 2012) (permitting declaration of employee who was not personally present for same reason).  Ms. Hardy attested to having personal knowledge "based on my review of the books and records of Bank of America, NA ('BANA') maintained in the ordinary course and scope of business and from personnel in the appropriate offices and departments of BANA, and, if called as a witness, I could and would testify thereto."  R. at 595.  She therefore had the requisite personal knowledge under Rule 56(c)(4).

Ms. Hardy also provided a foundation for the attached documents under the business records exception.  The bankruptcy court did not abuse its discretion here, either.  First, the court found that Ms. Hardy need not be a custodian of the records to testify about them under Rule 803(6)(d).  Fed. R. Evid. 803(6), by its plain language, permits a foundation "as shown by the testimony of the custodian or other qualified witness."  (emphasis added).  The language "should be given the broadest interpretation," and requires only that the witness "understand the system." United States v. Pelullo, 964 F.2d 193, 201 (3d Cir. 1992).  Second, Ms. Hardy was qualified to lay the foundation for business records because she is familiar with the record-keeping procedures of the relevant entities.  The court listed Ms. Hardy's qualifications in full—e.g., her position at BANA, her familiarity with BANA's business practices related to servicing mortgages, her personal review of the relevant files, etc.—and substantiated these facts from her affidavit and deposition testimony.  The court therefore had a sufficient basis to include the documents under the business records exception.

### 3. Inadmissibility of McCabe Report

Debtors also assert that the bankruptcy court should not have excluded the McCabe Report. They argue that they did not realize they would need Mr. McCabe's report until Ms. Hardy gave testimony about the conveyance of the loan to the Trust. They also argue that BAC was not prejudiced by the delay.

BAC responds that the court correctly excluded the McCabe Report based on its untimeliness and its irrelevant subject matter. The Court agrees.

The bankruptcy court excluded the McCabe Report for two reasons. First, Debtors submitted the Report too late. They filed the Report simultaneously with their summary judgment motion after discovery had closed and without previously identifying the expert in any of their discovery responses. In a previous interrogatory, Debtors identified two other potential witnesses without mentioning Mr. McCabe. Thus, the court determined that the Report was not disclosed according to the requirements of Fed. R. Civ. P. 26(a) and (e).

Second, the substance of the Report was not relevant. Mr. McCabe opined on whether the loan was properly conveyed to the Trust. While the court recognized that Fed. R. Civ. P. 37(c)(1) gives the court latitude to impose lesser sanctions than exclusion, it held that the issue of proper conveyance to the the Trust has no bearing on determining the party entitled to enforce the Note, and Debtors lacked standing to challenge compliance with loan conveyance laws. Lesser sanctions than exclusion were therefore not necessary.

Federal Rule of Civil Procedure 37(c)(1) provides that when "a party without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) [that party] shall not, unless such failure is harmless, be permitted to use as evidence at trial . . . any witness or information not so disclosed." Although exclusion constitutes a drastic and generally disfavored

remedy, the decision of whether to allow certain expert testimony rests within the sound discretion of the district court. <u>Otsuka Pharm. Co. v. Torrent Pharm. Ltd., Inc.</u>, No. 14-1078, 2015 WL 5665771, at *8 (D.N.J. Sept. 25, 2015) (citing <u>In re TMI Litig.</u>, 193 F.3d 613, 663 (3d Cir. 1999)). Here, both bases for exclusion were appropriate. The court considered how the untimely filing surprised and prejudiced BAC. Although Debtors submit that they were operating under a tight deadline, the court noted that Debtors could have but did not request an extension of the discovery deadline. Furthermore, the court considered alternatives to exclusion before ultimately selecting it but found that the Report would not add anything to the proceeding in light of its irrelevance. <u>See</u> Sec. IV.C, <u>infra</u>. The court therefore appropriately used its discretion in excluding the McCabe Report.

### 4. Inadmissibility of Exhibit J

Finally, Debtors argue that the bankruptcy court should not have excluded Exhibit J for lack of authentication. They offered the exhibit to show that the signature on the second version of their note was allegedly identical to indorsements on other notes, thereby raising the suspicion of robo-signing. Because these signatures came from documents BAC had filed publically, they argue, the court should not have excluded them.

To satisfy the authentication requirements under Fed. R. Evid. 901(a), "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." It does not require conclusive proof of a document's authenticity, but merely a prima facie showing of some competent evidence to support authentication. <u>United States v. Turner</u>, 718 F.3d 226, 232 (3d Cir. 2013) (internal citations omitted).

The court's decision to exclude Exhibit J for lack of authentication was not an abuse of discretion. The exhibit merely compiles cropped images of several indorsement signatures and

excerpted signatures pages.  Debtors did not supply any authentication for these signatures.  If, as Debtors argue, the documents were public records, then they failed to authenticate them as required under Fed. R. Evid. 901(b)(7) (Evidence About Public Records).  Nor do Debtors lay any foundation for the photocopies, the handwriting, or any other competent evidence to support that the documents are what Debtors claim they are.  In sum, Exhibit J was properly excluded.

### C.  Substantive Issues

Debtors assert that the court committed several appealable errors with respect to its grant of partial summary judgment in favor of BAC.  First, the court should not have found that Debtors lacked standing to challenge the validity of the assignment of the mortgage loan.  Second, the court should not have ignored the split of the note from the mortgage loan.  Third, the court should not have found that BAC did not violate the FDCPA.  None of these arguments warrant reversal.

### 1. Standing to Challenge Assignment of Loan to Trust

Debtors assert that, as a matter of law, obligors have standing to challenge the validity of the assignment of an obligation.  Therefore, they argue, the bankruptcy court incorrectly found that they did not have standing to challenge the assignment of the mortgage loan as noncompliant with the PSA or New York trust law.  Their argument ignores on point precedent in this district and misinterprets Third Circuit case law.

To establish standing, "a Plaintiff must establish that he or she has suffered an 'injury in fact' that is both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical." Doe ex rel. v. Lower Merion Sch. Dist., 665 F.3d 524, 542 (3d Cir. 2011) (internal citations omitted).  A Plaintiff that is not a party to a contract lacks standing to sue for a violation of the contract.  Glenn v. Hayman, No. 07-112, 2007 WL 894213, at *10 n.15 (D.N.J. Mar. 21, 2007).

In the context of a mortgage assignment, this district has often held that a mortgagor, or borrower, does not have standing to allege that an assignment between two third parties is invalid. See, e.g., English v. Fed. Nat. Mortg. Ass'n, No. 13-2028, 2013 WL 6188572, at *4 (D.N.J. Nov. 26, 2013); Schiano v. MBNA, No. 05-1771, 2013 WL 2452681, at *25-26 (D.N.J. Feb.11, 2013); see also In re Walker, 466 B.R. 271, 285 (Bankr. E.D. Pa. 2012) ("[I]t appears that a judicial consensus has developed holding that a borrower lacks standing to (1) challenge the validity of a mortgage securitization or (2) request a judicial determination that a loan assignment is invalid due to noncompliance with a pooling and servicing agreement, when the borrower is neither a party to nor a third party beneficiary of the securitization agreement.").

Here, the bankruptcy court correctly held that Debtors did not have standing. They were neither a party to the PSA nor third party beneficiaries of the agreement. The court's holding is therefore consistent with the above-cited case law and with the weight of authority from other jurisdictions. See Op. at 20-21 (collecting persuasive cases).

Moreover, it is not inconsistent with Adams v. Madison Realty & Development, Inc., 853 F. 2d 163 (3d Cir. 1988), Debtors' main case in support of its argument. Adams does not discuss standing to challenge agreements between third parties. Rather, it addressed the "narrow" issue of "whether a good faith purchaser is a holder in due course of promissory notes containing indorsements on separate sheets of paper loosely inserted within each note." Id. 853 F. 2d at 164. Beyond this narrow issue, Adams simply reaffirms that rule that the maker of the note has a right to determine who the holder of the note is. See id. at 167-68.

The bankruptcy court addressed that right. The court properly applied the New Jersey Uniform Commercial Code ("UCC"), which provides that a holder is entitled to enforce a note. N.J.S.A. 12A:3-301. Where, as here, the ownership of an instrument is transferred, the transferee's

attainment of the status of "holder" depends on the negotiation of the instrument to the transferee. In re Kemp, 440 B.R. 624, 630 (Bankr. D.N.J. 2010) (citing N.J.S.A. 12A:3–201(a)).   The two elements required for negotiation are the transfer of possession of the instrument to the transferee, and its indorsement by the holder.   Id. (citing N.J.S.A. 12A:3–201(b)).

The court considered both elements in its analysis.   It found that the Trust was the holder of Debtors' note because: (1) in the course of the litigation, the note and mortgage were transferred to the Trust and BAC, as the Trust's sub-servicer, giving them possession; and (2) the note contained a special indorsement to the Trust.   Thus, the court held "even if there was no compliance with the PSA, this fact would not affect . . . that . . . the Trust is the holder of Plaintiffs' Note." Op. at 21.   Consequently, the Trust and BAC were entitled to file a Proof of Claim against the Debtor.   Id. at 22.

### 2. Split of Note from Mortgage Loan

Debtors also argue that the bankruptcy court ignored the split of the note from the mortgage.   They appear to argue that this split was both a violation of the PSA and failed to comply with the UCC's requirements governing the sale of promissory notes.

Debtors are wrong on both accounts.   First, the bankruptcy court directly addressed Debtors' note-splitting argument:

> The court also rejects Plaintiffs' argument that the mortgage became "split" from the Note.   It is well-settled law in New Jersey that the mortgage follows the note.   Bank of New York v. Raftogianis, 418 N.J. Super. [323], 450 (N.J. Super. Ch. 2010)[.]   "The assignment of a bond or note evidencing a secured obligation will operate as an assignment of the mortgage 'in equity.'"   Id. (citation omitted).

Op. at 22 n.12.   Second, as discussed, Debtors do not have standing to raise violations of the PSA. Third, as the court noted, under New Jersey law, any split from the note does not render the obligation invalid.   See Raftogianis, 418 N.J. Super. at 348.

### 3. FDCPA Claim

Finally, Debtors assert that the court should not have granted summary judgment in favor of BAC on its FDCPA claim.  They argue that BAC violated 15 U.S.C. §§1692e(3) and (10) and 1692f(1) when BAC identified itself in the Proof of Claim and plan objection as creditor and holder of the mortgage, informed Debtors that it was the owner of the note, and created the Assignment of Mortgage that transferred the mortgage to BAC.[9]

As an initial matter, this appears to be the first time Debtors raise these arguments.  The bankruptcy court discussed the vague nature of the Debtors' FDCPA allegations and their refusal to clarify:

> [BAC] points out that in response to its interrogatory requesting a detailed factual basis for the FDCPA claim [Debtors] responded:
>
> > For some number of years, an agent or agents of BAC have collected and attempted to collect money from Plaintiff (sic) without the legal right to do so or while having indicated that BAC is the owner of the mortgage loan that BAC does not own. In so doing, BAC's agent or agents also have "applied payments in contravention of terms of the applicable agreements, have transmitted false account statements, correspondence and other documents."
>
> (Defendant's S.J. Mot. Exh. H). No further detail is provided by Plaintiffs except for their claim that the FDCPA was violated when Defendant placed their November 9, 2009 payment into a suspense account rather than applying it to the loan balance.

Op. at 23.  The court held that the response does not describe conduct that violates the FDCPA provisions Defendants cite.  Id. at 24.  Debtors now form their FDCPA claims into theories that

---

[9] Section 1692e(3) prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney"; Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer"; and Section 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

were never raised before the bankruptcy court.  "[A]n appellate court may only review the record as it existed at the time summary judgment was entered," and appellants cannot "advance new theories or raise new issues in order to secure a reversal of the lower court's determination." Brauser Real Estate, LLC v. Meecorp Capital Mkts., LLC, 484 F. App'x 654, 659 (3d Cir. 2012) (internal citations omitted).

Even if this Court were to reach Debtors' arguments, they still fail.  First, Debtors cannot raise their Proof of Claim arguments under the FDCPA, as discussed above.  Second, because BAC was able to enforce the note on behalf of the Trust, its Proof of Claim and Plan Objection filings were neither false nor misleading.  Third, Debtors do not support their Assignment of Mortgage argument with evidence that raises questions of material fact and provide no case law in support of their argument.  Accordingly, Debtors do not assert actionable FDCPA claims.

## IV.  CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** all of the bankruptcy court's orders from which Debtors appealed.  An appropriate Order accompanies this Opinion.

**Dated: December 28, 2015**

/s Madeline Cox Arleo
HON. MADELINE COX ARLEO
UNITED STATES DISTRICT JUDGE